1
2
3
4
5
6
7

**UNITED STATES FEDERAL DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

8
9

10   | RUTHANNA SHIRLEY,
11   | JOHNATHAN HONE, CARLY
     | PETERS, CHARLES FRADY,
     | MARCUS SANCHEZ, MORGAN
     | WINES, SAMUEL KOLB,
12   | STEPHEN J. ANDERSON,
13   | THOMAS MOATS, TRENTON DE
     | BOER, DONALD BRADLEY
14   | ALLEN, JOSHUA BELTZ, ERIC
     | OSWALD,
15

**CASE NO. 3:23-cv-05077**

**COMPLAINT**

**JURY DEMANDED**

16                        Plaintiffs,

17   vs.

18   WASHINGTON STATE
19   DEPARTMENT OF FISH AND
     WILDLIFE, a Washington State
20   Governmental Agency; KELLY
     SUSEWIND, an individual, AMY
21   WINDROPE, an individual, LONNIE
     SPIKES, an individual, STEVE
22   BEAR, an individual, CRAIG
     BURLEY, an individual,
23
                        Defendants.
24

COMPLAINT                          1

# I.   **INTRODUCTION**

1.   Plaintiffs are thirteen (13) former State employees who were wrongfully denied accommodations and terminated for non-compliance with a new State requirement for COVID-19 vaccination, in violation of their Constitutional and statutory rights.  Plaintiffs come to this Court to be made whole.

# II.   **PARTIES**

2.   Defendant Washington State Department of Fish and Wildlife ("WDFW" or the "Department") is a governmental agency of the State of Washington.

3.   Defendant Kelly Susewind is Director of the Department, and is an employer, officer, vice principal and/or agent for purposed of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Susewind performed the acts and omissions complained of herein to advance his career and/or for his personal benefit and the benefit of his marital community.

4.   Defendant Amy Windrope is Deputy Director of the Department, and is an employer, officer, vice principal and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Windrope performed the acts and omissions complained of herein to

COMPLAINT

2

advance her career and/or for her personal benefit and the benefit of her marital community.

5.  Defendant Lonnie Spikes is Director Human Resources with WDFW, and is an employer, officer, vice principal, and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Spikes performed the acts and omissions complained of herein to advance his career and/or for his personal benefit and the benefit of his marital community.

6.  Defendant Steve Bear, Chief of WDFW Police, and is an employer, officer, vice principal, and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Bear performed the acts and omissions complained of herein to advance his career and/or for his personal benefit and the benefit of his marital community.

7.  Defendant Craig Burley, Department Deputy Director for Fish Program, and is an employer, officer, vice principal, and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Burley performed the acts and omissions complained of herein to advance his career and/or for his personal benefit and the benefit of his marital community

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

8.      Plaintiff Ruthanna Shirley was a Fish and Wildlife Biologist 2, who during employment with the Department was a resident of Washington State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and was terminated by the Department.  Ms. Shirley had verifiable natural immunity through a positive antibody test and performed her job primarily outdoors with supervisory responsibilities and data analysis responsibilities easily performed remotely.

9.      Plaintiff Johnathan Hone was a Fish and Wildlife Biologist 2, who during employment with the Department was a resident of Washington State, was granted a religious exemption from the Department's vaccination requirement, but was wrongfully denied an accommodation and was terminated by the Department. Mr. Hone's job was performed primarily outdoors with supervisory responsibilities and data analysis responsibilities easily performed remotely.

10.     Plaintiff Carly Peters was a Fish and Wildlife Police Officer, who during employment with the Department was a resident of Washington State, and who was granted both a religious and medical exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and was terminated by the Department. Ms.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

Peters had verifiable natural immunity and performed her job entirely outdoors alone in her patrol vehicle.

11.   Plaintiff Charles Frady was a Fish and Wildlife Biologist 3, who during employment with the Department was a resident of Washington State, and who was granted both a religious and medical exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and was terminated by the Department.  Mr. Frady's job was performed primarily outdoors with supervisory and data analysis responsibilities easily performed remotely, and he had both verifiable natural immunity as confirmed through a positive antibody test and a positive COVID-19 test.

12.   Plaintiff Marcus Sanchez was a Fish and Wildlife Police Officer, who during employment with the Department, was a resident of Washington State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and was terminated by the Department. Mr. Sanchez's work was performed primarily outdoors alone in his patrol vehicle.

13.   Plaintiff Morgan Wines was a Fish and Wildlife Police Officer, who during employment with the Department was a resident of Washington State, and who was granted a religious exemption from the

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

Department's vaccination requirement but was wrongfully denied an accommodation and terminated by the Department.    Ms. Wines performed her work primarily outdoors, alone, in her patrol vehicle, and has verifiable natural immunity as confirmed through a positive COVID-19 antibody test.

14.    Plaintiff Samuel Kolb was a Fish and Wildlife Biologist 3, who during employment with the Department was a resident of Washington State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and terminated by the Department.  Mr. Kolb worked outdoors but was told he was denied an accommodation because he would have to meet with his supervisor indoors.

15.    Plaintiff Stephen J. Anderson was a Fish and Wildlife Technician 2, who during employment with the Department was a resident of Washington State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and terminated by the Department. Mr. Anderson worked almost exclusively outdoors.

16.    Plaintiff Trenton De Boer was a Fish and Wildlife Biologist 2, who during employment with the Department was a resident of Washington

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and terminated by the Department. Mr. De Boer worked primarily outdoors with supervisory and data analysis responsibilities which could easily be performed remotely.

17. Plaintiff Thomas Moats was a Fish and Wildlife Police Officer, who during employment with the Department was a resident of Washington State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and terminated by the Department. Mr. Moats worked primarily outdoors alone in his patrol vehicle and had demonstrable natural immunity confirmed through a positive COVID-19 test.

18. Plaintiff Donald B. Allen was a Fish and Wildlife Scientific Technician 3, who during employment with the Department was a resident of Washington State, and who retired prematurely under duress after he was told by the Department that there were no accommodations available and that he would lose his pension if he did not resign. Mr. Allen worked almost exclusively outdoors and alone.

19. Plaintiff Joshua Beltz was a Fish and Wildlife Police Officer, who during employment with the Department was a resident of Washington

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

State, and who was granted a religious exemption from the Department's vaccination requirement but was wrongfully denied an accommodation and terminated by the Department. Mr. Beltz worked primarily outdoors and alone in his patrol vehicle.

20. Plaintiff Eric Oswald is Fish and Wildlife Police Sergeant, who during employment with the Department was a resident of Washington State, was granted a religious exemption but wrongfully denied an accommodation and terminated by the Department. Mr. Oswald worked alone in his patrol vehicle and worked half his time outdoors and half his time performing administrative duties, which he could easily perform remotely in his patrol vehicle and, in fact, did perform those duties remotely, as he was expected to be in the field and only minimal office time only if needed.

### III. JURISDICTION AND VENUE

21. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343.

22. Venue is proper in this Court under 28 U.S.C. § 1391 where the Department is headquartered within this District and, independently, where Defendant Windrope is a resident of this District.

23. In compliance with Wash. Rev. Code § 4.92.100, Plaintiffs have submitted Tort Claims with the Washington State Office of Risk

COMPLAINT                                    8

Management; sixty days have passed since that submission, during which all statutes of limitations were tolled pursuant to Wash. Rev. Code § 4.92.110.

## IV.   FACTS

24. Plaintiffs were employed by the Department until they were wrongfully terminated on or about October 18, 2021.[1]

25. During 2020, several experimental vaccines were developed to limit the effects of COVID-19.

26. These vaccines were developed quickly to protect those who were at highest risk of getting seriously ill from COVID-19, especially the elderly and those with multiple co-morbidities.

27. Pfizer officials have admitted that its vaccine was not tested for efficacy at preventing transmission or infection.

28. It is now universally admitted that the vaccinated can contract and transmit COVID-19.

29. Recorded "breakthrough" cases (fully vaccinated individuals contracting COVID-19) in Washington State from July 17, 2021, to July 9, 2022, alone totaled 636,766.

---

[1] Plaintiffs were required to turn in equipment, badges, computer, etc, on October 18, 2021, and were then put on leave without pay while Defendants allegedly conducted a termination process, with an "official" termination date sometime after the October 18, 2021 date.  Official termination dates vary, but effectively each was terminated on or about October 18, 2021.

COMPLAINT                                    9

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

30. Nevertheless, on August 9, 2021, Governor Inslee issued Proclamation 21-14 (with amendments 21-14.1 on August 20, 2021, and 21-14.2 on September 27, 2021, the "Proclamation").

31. The Proclamation provided that "State agencies…*must* provide any disability-related reasonable accommodations and sincerely held religious belief accommodations to the requirements of this Order that are required under the American with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973 (Rehabilitation Act), Title VII of the Civil Rights act of 1964 (Title VII), the Washington Law Against Discrimination (WLAD), and any other applicable law." (emphasis added).

32. Proclamation 21-14.2 likewise provided that state agencies "*must comply* with the procedures required under the above-noted laws and any other applicable laws when considering and deciding whether to provide accommodations." (emphasis added).

33. Under both Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Washington Law Against Discrimination, Wash. Rev. Code. 49.60 ("WLAD"), any employer's restrictions of employees' constitutional rights must be narrowly tailored to further a compelling government interest.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

34.    The Washington State vaccine mandate imposed by the Proclamation was continuously and zealously enforced, despite a plethora of admissions by government officials and scientists that the vaccines did not stop transmission or infection of the virus, and thus the mandate could not further the goal of stopping the spread of COVID-19.

35.    Pursuant to Proclamation 21-14, Defendants demanded their employees be vaccinated or be terminated.

36.    Defendant Susewind stated in an "All Staff Teams Video Meeting" on August 12, 2021, that the Proclamation applied to WDFW, "that all our staff need to be fully vaccinated by October 18th," that "our bottom line for us is that this is a *nondiscretionary act we have to implement*…." and that "we don't have a lot of choice or latitude, but you have a commitment from me and [Defendant] Amy [Windrope] to support staff in any way we can and to do this in as compassionate of a way as we can."

37.    Defendant Susewind likewise stated he would "do this in as empathetic and supportive way as we can, but I also get to be the one to dump the cold water, too.  We have to comply with the Proclamation and it says that you as a worker are prohibited from working after October 18th and

COMPLAINT                                11

we as employer, or state agencies, are prohibited from allowing you to work after the 18th…"

38. Defendant Susewind likewise stated in that same meeting that "as agency administrators we don't get to question the logic on this one. We've checked with our attorneys [at OFM], we're told it's legal, we have to follow it, and so…I am feeling sorry for [Defendant] Amy taking all the heat here…"

39. Defendant Susewind fundamentally misrepresented the terms of Proclamation 21-14, as it did not demand vaccination with no ability to work but required agencies to comply with all state and federal law, specifically citing ADA, the Rehabilitation Act, Title VII, WLAD, and any other applicable law." Proclamation 21-14, *supra.*

40. Defendant Susewind authorized the failure to perform an interactive process compliant with those federal and state laws but instead made the predetermined decision that nothing other than vaccination would assure compliance with the Proclamation.

41. Many employees of Defendants, including numerous Plaintiffs, questioned Defendants regarding the known fact that the vaccine did not stop transmission or infection.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

42. Defendants refused to acknowledge any such information presented to them by Plaintiffs.

43. In August–September 2021, each Plaintiff completed and submitted a request for religious exemption, and in some cases also for medical exemption, from the Department's new employee vaccination requirement.

44. The Department correctly found that each Plaintiff had a sincerely held religious belief that prevented them from receiving the COVID-19 vaccination, and/or had a medical exemption that prevented vaccination, and the Department therefore granted each Plaintiff a nominal exemption from the vaccination requirement.

45. Even though each Plaintiff worked primarily outdoors, which significantly reduces any risk of viral transmission, the Department refused to consider outdoor work as an accommodation to the vaccination requirement.

46. Neither the Department nor any of the individual Defendants can articulate any undue hardship in accommodating any of the Plaintiffs.

47. Independently, the Department could not, and cannot, articulate a relative undue hardship in accommodating the Plaintiffs, as balanced against the negative impact on the Department of incurring staffing

COMPLAINT                                    13

shortages. The Department's actions in refusing to accommodate Plaintiffs has resulted in undue hardships to the citizens of Washington, the environment, and the mission of the Agency.

48. Defendants, after the termination of religious and/or medical exempted employees without accommodation, adopted a policy authorizing the use of unvaccinated volunteers to help fill the extraordinary loss of experience and manpower caused by the mass termination. This policy demonstrates an arbitrary and capricious policy that terminates religious and medical objectors for no vaccination, ostensibly to prevent the spread of COVID-19, then authorizes the use of unvaccinated volunteers to enter the workplace carrying that same alleged risk.

49. In fact, Plaintiff Allen was specifically requested to become a volunteer and return to his old job unpaid, even in his unvaccinated status.

50. Plaintiff Shirley has been ridiculed, harassed, ostracized, and degraded by Defendants upon her return to her job after reinstatement.

51. In fact, on Ms. Shirley's first day back at work after her successful Arbitration Order reinstating her with backpay, Defendant Spikes facilitated and furthered a hostile work environment when he ordered Ms. Shirley to remove two balloons and flowers that had been placed

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

on her desk anonymously from co-workers welcoming her return. Defendant Spikes alleged to other employees that there was a complaint from someone but did not reveal the nature of the complaint or the reason flowers and balloons were offensive.

52. Defendant Spikes ordered Plaintiff Shirley to immediately carry the balloons and flowers to her vehicle, in front of her colleagues, with the specific intent to embarrass and humiliate Ms. Shirley.

53. Other employees acting under authority from Defendants furthered that hostile work environment by chastising employees who acknowledged in a positive way Ms. Shirley's imminent reinstatement and return to the office.

54. Plaintiff Shirley's vaccination status has likewise been revealed to those who would have no way of knowing that information unless Defendants violated Ms. Shirley's privacy and disclosed that private medical information without her consent, which is a violation of federal law.

55. Defendants also held discussions of Plaintiffs' private vaccination status at numerous in-person Regional Management Team meetings with eight or more individuals in attendance, which had no relevance to the issues being discussed.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

56.   Defendant Burley also created a hostile work environment.  Defendant Burley had been the individual who gave approval for many of the separation letters, including, but not limited to Plaintiff Shirley's separation letter dated November 29, 2021, which resulted in her termination on December 10, 2021. Defendant Burley gave approval for the denial of accommodations in letters sent to the Department's HR.

57.   Defendant Burley called Plaintiff Shirley's supervisor, Eric Winther, on December 6, 2022, shortly after Ms. Shirley's reinstatement was publicly announced, telling Mr. Winther that other people in the Department were allegedly not excited about Ms. Shirley's reinstatement and pending return to her job.

58.   Defendant Burley told Mr. Winther that he had been made aware that Ms. Shirley's program colleagues were organizing an alleged return party for her return, and Mr. Winther was ordered to prohibit or cancel such an event.

59.   Defendant Burley also manipulated facts regarding Plaintiff Shirley and Hone's timesheets to initiate an investigation against Mr. Winther.  The investigation concluded that Mr. Winther had done nothing improper.

COMPLAINT                                          16

60. Such action was taken for discriminatory and harassment purposes against Plaintiffs Shirley and Hone.

61. Defendants have continued to discriminate against Ms. Shirley with no compelling reason by mandating that she wear a mask and social distance, despite no other individuals having to wear a mask or social distance, in contradiction to CDC policy to treat the vaccinated and unvaccinated alike.

62. Plaintiff Shirley has been told that any violation of her accommodation to social distance and wear a mask could result in her immediate termination. This threat of noncompliance has required Ms. Shirley to proclaim to coworkers who wanted to hug her upon her return to the office that she was not allowed any contact closer than six feet. No one else in the office is wearing a mask or social distancing.

63. Plaintiffs fear this same retaliatory and hostile work environment awaits them upon their potential return to their jobs.

64. Defendant WDFW has a culture of harassment, bullying, and unprofessional conduct that was the subject of a special Performance Audit by the Office of Washington State Auditor, Pat McCarthy, published September 13, 2021. The Audit concluded that there were "real concerns about different forms of unprofessional behavior,

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

communication breakdowns across the agency, and a general lack of confidence in management's ability to address issues."

65. Moreover, the Audit concluded that "[e]mployees described widespread unprofessional behavior that has not been successfully addressed, lessening trust in agency leadership."

66. Some of the Plaintiffs endured humiliating comments and opinions from Defendants who voluntarily injected their opinions and attitudes into what should have been a private medical and faith decision between Plaintiffs, their God, their health care provider, and their families.

67. Several Plaintiffs were denied medical exemptions from doctors and were routinely told by health care providers that they could not sign medical exemptions for fear of retaliation by the State.

68. Plaintiff Peters was nursing a newborn baby and requested a medical exemption based on the unknown effects of the vaccine on her child, which was granted by Defendants.  Defendant Bear stated during "coffee chat" TEAMS meetings that Officers were dying from COVID because they were not vaccinated, and that vaccination was like "wearing a seat belt," but he told Ms. Peters that he would not recommend his wife getting the shot if she were nursing.

COMPLAINT                                    18

69. Defendant Bear also told Ms. Peters that his "AG rep," presumably his Human Resources point of contact within the Attorney General's Office, and Defendant Bear both agreed with each other that if their wives were nursing, they would not recommend taking this vaccine. Defendant Bear signed Ms. Peter's letter notifying her of her termination. Ms. Peters was still nursing her child at that time.

70. Defendant Bear likewise directly pressured Morgan Wines specifically, as well as others, through guilt and shame to take the vaccine, stating that his daughter was a nurse and knew that COVID was killing people. Defendant Bear also sent lengthy numerous emails to Plaintiff WDFW police officers about how the virus was killing officers and that the vaccine would solve the issue.

71. This unrelenting pressure to change their choices was a wrongful intrusion into Plaintiffs' private decisions.

72. At least thirteen individuals working for WDFW, including Plaintiffs Shirley, Kolb, and Hone, were officially granted an accommodation, approved by their supervisors, to continue to work outdoors with specific personal protective equipment, ("PPE"), but then Defendant Windrope rescinded 13 accommodations without reason, justification,

COMPLAINT                                     19

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

or explanation, and demanded the exempt employees receive vaccination.

73. Several Plaintiffs, including Mr. Allen, were told by Defendants that there would be no accommodation and that applying for an exemption was a pointless and futile process.

74. Plaintiff Allen was told by the Department that if he did not retire or voluntarily quit, he would lose retirement benefits.

75. Plaintiff Allen was forced to retire, but within two weeks he was asked by an employee of WDFW to check some traps that were part of his regular duties even though he was no longer employed.

76. Plaintiff Allen was also specifically solicited in writing to "volunteer" with WDFW, with WDFW knowing full well his unvaccinated status and his forced retirement.

77. Defendants continued to reach out to Plaintiff Allen for months after his forced retirement to answer questions related to the job Mr. Allen performed.

78. Plaintiffs did not receive an individualized assessment or interactive dialogue to discuss accommodation options prior to the Department's decision to terminate them.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

79.    This is shown by, at least, the Department's granting of exemption and denial of accommodation only a few days after certain Plaintiffs applied, without any discussion with those Plaintiffs.

80.    The Department's failure to provide an individualized assessment through an interactive dialogue was in violation of the Proclamation itself, and of Plaintiffs' constitutional rights and rights under Title VII and WLAD.

81.    As stated, by early to mid- 2021, it had become clear that the COVID-19 vaccines developed by Pfizer, Moderna and Johnson & Johnson did not prevent recipients from being infected with, or spreading, COVID-19.

82.    Thus, unlike polio or smallpox vaccines, the COVID-19 vaccines did not eliminate infection and could not end transmission of the virus.

83.    Many studies confirmed this fact, including studies from the Centers for Disease Control ("CDC"), upon whom Defendants allegedly relied.

84.    The single benefit of the COVID-19 vaccine, as even the government admits, is to protect an infected, vaccinated person from severe illness or death, but even that benefit is disputed, and wanes over time to the extent it exists at all.

COMPLAINT                              21

85.  Defendants denied accommodations to Plaintiffs based entirely on Plaintiffs' general job descriptions and did not have any individualized and interactive discussion with the Plaintiffs prior to the decision to terminate.

86.  In some instances, job descriptions which were relied upon by Defendants had not been updated in years.  For instance, Mr. Hone's job description was nearly 20 years outdated and had not been updated since 2003, and Ms. Shirley's job description had not been updated since 2017.

87.  Even Plaintiffs who had supervisory responsibilities which they had always performed remotely were told they could no longer perform those duties remotely and would have to supervise co-workers in person.  Therefore, Defendants claimed no accommodation could be made for supervisors, as a blanket rule.

88.  Likewise, Plaintiffs who had often met with their own supervisors remotely before COVID-19 were told they could no longer do so and had to conduct any interaction with their supervisor in person, and thus, could not be accommodated.

89.  Defendants purposefully fashioned this new requirement with the end goal of denying exempt employees reasonable accommodations which

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

posed no undue burden and had, in fact, been normal operating procedure prior to the onset of the COVID-19 pandemic.

90.  Plaintiffs were denied *Loudermill* hearings.

91.  Defendants identified no undue hardship that prevented the accommodation of Plaintiffs.

92.  Plaintiffs were told by Defendants that that they posed a "significant risk of harm" in their unvaccinated state such that "no accommodation could be identified to eliminate or reduce the risk of infection" to vaccinated co-workers or the public with which they might come into contact.

93.  Defendants did not identify what that significant risk of harm was.

94.  Defendants refused to accommodate Plaintiffs based on purely speculative harm regarding Plaintiffs' *potential* public interaction, regardless of whether there had been any such public interaction in the past, and regardless of whether any minimal *potential* exposure which might become necessary could be accommodated through the use of personal protective equipment ("PPE").

95.  Defendants denied accommodations knowing that all the Plaintiffs worked outdoors and alone all or nearly all the time.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

96.    Defendants were aware at the time of termination of Plaintiff that the COVID-19 vaccines did not protect against infection and were therapeutic, at best.

97.    Defendants were told directly by some Plaintiffs that numerous published studies concluded that the vaccines did not prevent infection, which Defendants chose to ignore.

98.    There were many published studies, even by the CDC, documenting the catastrophic failure of the vaccine that were released prior to the October 18, 2021, termination date.

99.    Defendants refused to answer Plaintiffs' inquiries regarding how Plaintiffs posed any greater "risk of harm" vaccinated than unvaccinated, given the abject failure of the vaccines to prevent infection and transmission, and given these studies.

100.    As noted *supra*, many Plaintiffs presented a positive COVID-19 antibody test and/or a positive COVID-19 test, but Defendants refused to consider this evidence of natural immunity as a point in favor of accommodating exempt employees. These positive tests were historical and were presented after full recovery.

101.    Defendants also refused to consider accommodating Plaintiffs by letting them use PPE on the job, even though all Plaintiffs had already

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

worked nearly 18 months successfully utilizing PPE and social distancing to avoid infection.

102. Defendant provided no evidence of any COVID-19 transmissions at any time which could be traced to any Plaintiff.

103. The particular egregious nature of the terminations of Plaintiffs is evidenced by the stellar performance record of each in the performance of their jobs. For example, as a supervisor, Plaintiff Shirley was awarded the Leadership Through COVID award in Region 5 in September 2020, the first award of its kind, for her ability to lead her team through COVID teleworking, but then was terminated a year later and denied the ability to telework.

104. Plaintiff Hone and Plaintiff Shirley both received the Public Engagement Award for the Pikeminnow program they supervised for their exemplary performance navigating the pandemic.

105. The Department operated under a 2014 "declaration" by Governor Inslee[2] that encouraged telework and sought to increase the remote public service workforce to 40% by 2017.

**Arbitration Decisions and Awards**

---

[2] *See* Executive Order 14-02.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

106.   Most of the Plaintiffs have filed grievances for Union arbitration and have either received favorable decisions awarding backpay and reinstatement or are waiting arbitration of their individual grievances.[3]

107.   Plaintiffs Shirley and Hone each received an Arbitrators' Decision and Award of reinstatement and backpay due to their wrongful termination. A copy of those decisions by two different arbitrators, are attached as Exhibits A (Shirley) and B (Hone) to this Complaint and incorporated as if fully set forth herein.

108.   Nonparty Tyler Kave was also successful at arbitration, with the Arbitration Opinion attached as Exhibit C to this Complaint and incorporated as if fully set forth herein.

109.   Specifically, those Arbitration decisions found that the Department (1) did not make a good faith effort, under established case law, to find a reasonable accommodation before asserting an undue hardship, (2) did not establish an undue hardship because it's [sic] conclusions were unsupported by the evidence, and (3) violated the Proclamations and

---

[3] One Plaintiff has an arbitration through WAFWP scheduled for March 14, 2023;  five (5) Plaintiffs have arbitrations through FWOG scheduled for February or March 2023; one (1) Teamsters arbitration is tentatively scheduled for end of March-beginning of April 2023; and four (4) Plaintiffs did not file a grievance of any sort. Two Plaintiffs, Shirley and Hone, have won arbitrations and Defendants were ordered to reinstate them with backpay and loss of benefits.

COMPLAINT                                      26

Title VII."  Exhibit A, Arbitration Decision and Award for Ruthanna Shirley ("Shirley Decision").

110. The Shirley Decision found that the Department did not consider masks and social distancing as accommodations and that "[f]ailing **to consider** available accommodations is extremely concerning.  It is difficult for the Agency to establish good faith when EEOC and/or CDC guidance is ignored and not considered." Exhibit A at 36 (emphasis in original).

111. The Shirley Decision further held that, "[t]here is nothing in the evidence to indicate that the Agency considered testing or any alternative accommodation to vaccination."  *Id.* at 37.

112. The Shirley Decision specifically addressed Defendant Windrope's having "rescind[ed] 13 reasonable accommodations that were approved," because they allegedly "did not comport with the guidance that we developed to ensure a safe workplace." *Id.* at 39.  Ms. Windrope "did not take this opportunity to explain with specificity," why masks and social distancing were no longer a reasonable accommodation.

113. The Shirley Decision disparaged Defendant Windrope for sending letters with subject line "Guidelines for Review of Reasonable Accommodations relative to the Governor's Proclamation 20-05, as

COMPLAINT                                27

well as an email regarding "Vaccine Mandate Update," neither of which discuss masks and social distancing as a reasonable accommodation, and do not disclose any guidance from OFM. *Id.*at 39.

114. "The position taken by the Agency constituted a hypothetical hardship in violation of Title VII because it was conclusory and unsupported by data and other statistical evidence." *Id.* at p. 40.

115. "There is **nothing in the exhibits and testimony** to indicate what type of guidance the Agency received not just from the Office of Financial Management, but also the Center for Disease Control and the Department of Health.  Again, without specifics as to what guidance was provided, it is difficult to determine" whether an accommodation is an undue hardship."  *Id.* at p. 41 (emphasis in original)

116. The Hone Arbitration Decision and Award ("Hone Decision"), Exhibit B, likewise ordered reinstatement and backpay.

117. The Hone Decision found that prior to Defendant Windrope's decision to rescind 13 accommodations she had already granted, the Plaintiffs had received a satisfactory accommodation process and "individualized consideration."  Exhibit B at 9.

118. The Hone Decision found it was Defendant Windrope who made the decision to "rescind" the reasonable accommodations provided to

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

Plaintiffs, resolving the question of whether the accommodations had been initially approved or not. *Id.* at 9.

119.  The Hone Decision specifically found that Defendants failed to follow the interactive process and that such failure could not be excused. *Id.* at 10.

120.  The Hone Decision also rejected Defendants' assertion that "in effect, no inquiry into an individuals' work situation – beyond evaluating a job description – was necessary." *Id.* at 10-11.

121.  The Hone Decision likewise rejected that supervisors had to meet with employees under their supervisory umbrella and that the work could not be done remotely.  *Id.* at 13-14.

122.  The Hone Decision found that "the Department failed to afford [Mr. Hone] the individualized consideration of his religious accommodation request that is required by law and by the parties' MOU.  In addition, at least as applied to Mr. Hone, The Department's *per se* rule against masking and distancing as part of an appropriate religious accommodation violated the law and the MOU." *Id.* at 16.

123.  Non-party Tyler Kave was similarly successful at arbitration against the Department. Exhibit C.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

124. The Kave Arbitration decision likewise found Defendants did not provide a legal accommodation process before terminating Mr. Kave. Exhibit C at 25.

125. Despite its universal failure to defend its conduct at arbitration, the Department refuses still to reinstate and pay wages withheld.

126. The arbitration awards, among other issues, are conclusive evidence that the Department's withholding of wages has been knowingly wrongful for purposes of Wash. Rev. Code § 49.52.070.

127. The arbitration awards are *res judicata* in favor of Plaintiffs Shirley and Hone, and also collaterally estop Defendants as to all other Plaintiffs, where the Department treated all Plaintiffs in the same manner as Shirley, Hone, and Kave.

128. Despite these three consistent and binding arbitration decisions, the Department has refused to reinstate others similarly situated, including the other Plaintiffs.[4]

129. The Department initially refused to adhere to, and take action regarding, at least one of these three binding arbitration decisions, for

---

[4] Defendants have yet to follow the arbitration order with respect to Plaintiff John Hone, who still has not been reinstated, nor received backpay.  Mr. Hone is likewise fearful of reentering the same hostile work environment currently faced by Plaintiff Shirley.

COMPLAINT                                    30

which it made no cognizable excuse, stating merely that it "did not want to" reinstate the individual.

130. The vaccines were known by the State of Washington to not prevent the transmission of COVID-19 *prior* to October 18. 2021. Attached as Exhibit D is a true and correct copy of an email between state and county health officials discussing breakthrough cases traced to a staff party from July 2021. Attached as Exhibit E is a true and correct copy of an email chain between state and county officials discussing the "concerning" trend of escalating rates of reinfection of vaccinated individuals in July 2021. Attached as Exhibit F is a true and correct copy of an email from Jeff Duchin, Professor of Medicine at the University of Washington and Chief, Communicable Disease Epidemiology and Immunization Section, Public Health, Seattle and King County, regarding ability of vaccinated to both reinfect and spread to others.

## V.     CAUSES OF ACTION AGAINST THE DEPARTMENT

### FIRST CAUSE OF ACTION
**Violation of Washington Law Against Discrimination Perceived Physical Disability**

131. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

COMPLAINT                                         31

132. The Washington Law Against Discrimination ("WLAD") prohibits discrimination in the workplace for actual or perceived disability. Wash. Rev. Code § 49.60.180. *Taylor v. Burlington Northern Railroad Holdings,* 193 Wash.2d 611 (2019) (en banc*).*

133. WLAD's definition of disability is broader than the definition in the ADA. *Pulcino v. Fed. Express Corp.,* 141 Wash.2d 629, 641 n.3 (2000).

134. A disability is defined as "a sensory, mental, or physical impairment that …(i) [i]s medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s *perceived* to exist whether or not it exists in fact." Wash. Rev. Code § 49.60.040(7).

135. Disability is also an impairment that "affects one or more of the … body systems." Wash. Rev. Code§ 49.60.040(7)(c)(i).

136. The legislature intended to adopt a broad and expansive definition of "disability" to protect against discrimination. *Taylor,* 193 Wash.2d at 618.

137. The EEOC has interpreted these rules to include protection for an actual or perceived immunological condition.

138. WLAD's definition of disability is broader than the definition in the ADA. *Pulcino v. Fed. Express Corp.,* 141 Wash.2d 629, 641 n.3 (2000).

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

139. Defendants perceived Plaintiffs as having an impairment and/or disability that identified them as presenting a "significant risk of harm."

140. Defendants acted believing Plaintiffs have a perceived physical disability of not having the best protection against COVID-19 in their bodies that conflicted with a stated job requirement defined by Defendants' vaccine mandate.

141. Defendants were aware of this conflict but did not explore any available reasonable alternatives for accommodating Plaintiffs to resolve the conflict. *Suarez v. State,* 2022 WL 4351109 (September 20, 2022).

142. Defendants refused to consider or explore accommodations and refused to balance the undue hardships to the citizens of Washington State, the environment, and the mission of the agency.

143. Defendants terminated Plaintiffs due to their perceived physical disability.

144. Defendants' actions caused Plaintiffs to suffer damages to be proven at trial, such actions being the actual and proximate cause of those damages.

## SECOND CAUSE OF ACTION
### Deprivation of Privacy, WA Const. Art. I, Sec. 7

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

145. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

146. No person shall be disturbed in his private affairs, or his home invaded, without authority of law.  Wash. Const. Art. I, § 7.

147. This constitutional right to privacy includes the right to autonomous decision-making and autonomy over one's medical care and includes the right to refuse treatment. *See, e.g., In re Welfare of Colyer,* 99 Wash.2d 114, 119-22, 660 P.2d 738 (1983); *see also* Wash. Rev. Code § 7.70.050.

148. Bodily autonomy is a critical component of the constitutional right of privacy.

149. The decision to suffer the battery of a vaccination is also a private affair which further impacts a citizen's bodily integrity.

150. The Washington State privacy protections under Art. I, § 7, are broader than the privacy rights under the U.S. Constitution's Fourth Amendment, as Section 7 guarantees, "an individual's right to privacy *with no express limitations." Robinson v. City of Seattle,* 102 Wash. App. 795 (2000) (emphasis added).

151. Plaintiffs have the right to make the decision whether to receive a COVID-19 vaccine and have the right to decide not to disclose their

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

personal medical history – including whether they have been "fully vaccinated" for COVID-19.

152. Despite these rights, Defendants will continue to violate the privacy rights of every individual seeking employment with WDFW.

153. Despite these rights, Defendants will continue to refuse reemployment to Plaintiffs.

154. Plaintiffs have been deprived of their rights to privacy by the actions of Defendants in forcing Plaintiffs to violate their religious and/or medical freedoms or suffer loss of employment and loss of pension.

155. The right to privacy is protected under Wash. Const. Art. I, § 7, as a fundamental right which can only be infringed upon by a law which satisfies a strict scrutiny analysis, that is, which furthers a compelling state interest and is narrowly tailored thereto, using the least restrictive means.

156. Defendants demanded termination of religious and medical objectors who did not vaccinate, alleged in the interest of stopping the spread of COVID-19.

157. However, the vaccines did not stop infection or transmission, and both the vaccinated and unvaccinated spread COVID-19.

COMPLAINT                                    35

158. The termination of religious and/or medical objectors did not further the alleged state interest because the efficacy of the vaccines failed. Defendants knew at the time of the termination that the vaccine was failing, but Defendants purposefully chose to continue with the wrongful termination of religious and medical objectors.

159. Even if the vaccines had worked as promoted, the Defendants failed to utilize a narrowly tailored method to control the spread of virus, leaping directly to termination without considering lesser available means of achieving the alleged objective.

160. Defendants failed to utilize PPE, testing, telework, or natural immunity in stopping the spread of COVID-19, and the method they relied upon – vaccination only – did nothing to stop the spread of the virus, as evidenced by a "cleansed" workforce with high breakthrough numbers of fully vaccinated contracting the virus.

161. Defendants' actions fail strict scrutiny.

162. Defendants' actions would fail even rational-basis review.

163. Additionally, Plaintiffs have been deprived of their right to privacy through the invasive nature of the religious exemption questionnaire which Defendants required them to answer.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

164. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### Deprivation of Life, Liberty, or Property, U.S. Const. Am. V., Am. XIV, WA Const. Art. I, Sec. 3.

165. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

166. No person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. Ams. V, XIV; Wash. Constitution, Art. I, § 3.

167. Plaintiffs suffered loss of pension rights and benefits as a direct result of the actions of Defendants.

168. Plaintiffs lost title to their real property due to Defendants' actions, had to relocate at considerable loss in the sale of that property, which are losses which they cannot recover.

169. Public employees have a property interest in their pensions, which cannot be unilaterally altered to the material disadvantage of the employee. *Eagan v. Spellman,* 90 Wash.2d 248 (1978).

170. Public employees have a property interest in their employment, cannot be terminated without "just cause," and cannot be terminated without due process, which includes a fair hearing. *Board of Regents v. Roth*,

COMPLAINT                                    37

408 U.S. at 564 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 (1985).

171. Plaintiffs were terminated from public employment without a hearing or other due process.

172. The law regarding due process in employment is well established.

173. Defendants knew the Fourteenth Amendment prohibits government from denying an employee due process.

174. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION
### Violation of the Equal Protection Clause of the WA Const. Art. I, Sec. 3

175. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

176. Wash. Const. Art. I, § 3, states that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

177. If a law neither burdens a fundamental right nor targets a suspect class, it will be upheld so long as it bears a rational relation to some legitimate end. *Romer v. Evans,* 517 U.S. 620, 631 (1996).

178. There was no rational relation to some legitimate government end because the action taken – termination of the unvaccinated – did not

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

further the interest of reducing the spread of COVID-19 given that the vaccinated and the unvaccinated both contract and transmit COVID-19.

179. In fact, people who are vaccinated for COVID-19 are more likely to become infected with and spread COVID-19 than are people who have recovered from COVID-19 and have natural immunity.

180. Defendants have treated different classes of people unequally, with the protected class of religious objectors not coincidentally were adversely impacted by the actions of Defendants.

181. The actions of Defendants, on its face and as applied, was not rationally related to a legitimate end.

182. The actions of Defendant have caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs.

183. Defendants' actions caused Plaintiffs to suffer damages to be proven at trial, such actions being the actual and proximate cause of those damages.

**FIFTH CAUSE OF ACTION**
**Deprivation of Religious Freedom, WA Const. Art. I, Sec. 11.**

184. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

COMPLAINT                                    39

185. Defendants' vaccination mandate and religious exemption questionnaire are contrary to and transgress Wash. Const. Art I, § 11, which states, "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion…No religious qualification shall be required for any public office or employment."

186. Plaintiffs' absolute right to religious freedom has been infringed.

187. Defendants, by their conduct and words, discriminated against the Plaintiffs for acting according to their conscience, guided by their religious faith, in refusing to be vaccinated.

188. Defendants' vaccination mandate, in conjunction with their religious exemption questionnaire, by design and intent, impose a religious qualification for public employment, and deny Plaintiffs' absolute freedom of conscience in all matters of religious sentiment, belief and worship, and result in an unauthorized molestation or disturbance of the Plaintiffs' persons and property rights on account of religion.

189. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

### SIXTH CAUSE OF ACTION
### Wage Theft

COMPLAINT                              40

190. Plaintiffs here reallege the allegations set forth above in this Complaint

191. Defendants have, willfully and with the intent to deprive, failed to pay wages to the Plaintiffs since the date of their respective terminations.

192. Defendants had a pre-existing duty under contract to pay Plaintiffs the specific compensation as set forth in their employment contracts.

193. Defendants were aware at the time of termination that Plaintiffs were being treated differently than secular and non-medical objectors by requiring religious and medical objectors to receive a vaccine to prevent infection, knowing that both the vaccinated and the unvaccinated both contracted and spread the COVID-19 virus equally, and affirmatively elected to ignore the established science.

194. Defendants have authority and control over the employment status and payment of wages to Plaintiffs.

195. Plaintiffs did not knowingly submit to the deprivation of wages.

196. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial, including at least lost wages and lost benefits, including pensions.

197. Defendants' actions are the actual and proximate cause of Plaintiffs' damages.

COMPLAINT                                    41

198. Plaintiffs not yet reinstated are entitled to back wages, and for all Plaintiffs to double damages, costs of suit and reasonable attorney's, Wash. Rev. Code § 49.52.070.

## SEVENTH CAUSE OF ACTION
### Breach of Contract

199. Plaintiffs here reallege the allegations set forth above in this Complaint.

200. There existed a binding contract between each Plaintiff and the Department that permitted termination only for "just cause."

201. Each Plaintiffs substantially performed their obligations under this contract.

202. The Department breached its contracts with Plaintiffs by terminating them without just cause.

203. Defendants' wrongful termination of Plaintiffs was based on a new condition of employment that was not part of Plaintiffs' contract when hired.

204. Defendants' actions violated Plaintiffs' right to continued employment by terminating them without "just cause" and by adding a new condition to employment – vaccination –without consideration.

205. Defendants' action also violated Plaintiffs' pension rights, likewise established by contract.

COMPLAINT                                    42

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

206.  Defendants' actions caused a substantial change to the pension rights of Plaintiffs established by Wash. Rev. Code Title 41 *et. seq.*

207.  Plaintiffs have suffered extraordinary financial loss because of the substantial change in their pension rights without cause.

208.  Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial, including at least lost wages and lost pensions.

**EIGHTH CAUSE OF ACTION
VIOLATION OF THE WASHINGTON LAW AGAINST
DISCRIMINATION
Failure to Accommodate**

209.  Plaintiffs here reallege the allegations set forth above in this Complaint.

210.  Each Plaintiff was found by the Department to have a sincerely held religious belief preventing vaccination and was granted an exemption, and/or was granted a medical exemption preventing vaccination due to a medical condition.

211.  Defendants were aware of these exemptions.

212.  Plaintiffs made repeated requests for accommodations but were shut down without discussion.

213.  Defendants failed to consider any of the accommodations proposed by Plaintiffs.

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

214. Defendant stated that reassignment was the only possible accommodation, but then universally denied reassignment to terminated employees.

215. Plaintiffs were forced to either (a) disregard their sincerely held religious beliefs, and/or put their health at risk, or (b) lose their positions, seniority, pensions, professions, and livelihoods.

216. Plaintiffs were forced to either be terminated or take a vaccine in direct violation of their sincerely held religious beliefs in order to feed their families.

217. Strict scrutiny applies where fundamental rights are concerned.

218. Where the mandated vaccine does not prevent infection or transmission, Defendants' actions, *and the continuance thereof,* are arbitrary and capricious and fail even a rational basis review.

219. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## NINTH CAUSE OF ACTION
## VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION
## Disparate Impact

220. Plaintiffs here reallege the allegations set forth above in this Complaint.

221. To the extent that Defendants' policy is facially neutral, it falls more harshly upon those within a protected class.

COMPLAINT                                    44

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

222. The Plaintiffs have been damaged by the disparate impact of the Defendants' policy.

223. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE FIRST AMENDEMENT OF THE UNITED STATES CONSTITUTION –**
**Free Exercise**

224. Plaintiffs here reallege the allegations set forth above in this Complaint.

225. All the acts of Defendants were conducted by them under color and pretense of the statutes, regulations, customs, policies, and/or usages of the State of Washington and the Washington Department of Fish and Wildlife.

226. The law regarding the free exercise of religion and employment is well established.

227. The law regarding due process in employment is well established.

228. Defendants Susewind and Windrope knew that the First Amendment prohibits governmental officials from demonstrating hostility to religion or prohibiting the free exercise thereof.

229. Defendants Susewind and Windrope acted with willful malice, and/or intentionally and in gross disregard of Plaintiffs' constitutional rights, and/or in reckless disregard of Plaintiffs' constitutional rights.

COMPLAINT                                   45                    ARNOLD & JACOBOWITZ PLLC
                                                                  8201 164TH AVE. NE, STE. 200
                                                                  REDMOND, WA 98052
                                                                  (206) 799-4221

230. As a direct and proximate result of Defendants' Susewind and Windrope's actions, Plaintiffs have been deprived of their constitutional rights to the free exercise of religion and to be free from governmental hostility directed at their religion and have been denied their rights to due process and equal protection under the law.

231. Defendant's actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## ELEVENTH CAUSE OF ACTION
## RELIGIOUS DISCRIMINATION –
## 42 U.S.C. §2000e–2(a)(1)

232. Plaintiffs here reallege the allegations set forth above in this Complaint.

233. Title VII of the Civil Rights Act of 1964 prohibits Defendants from discriminating against employees based on their sincerely held religious beliefs. *See* 42 U.S.C. § 2000e-2(a).

234. Plaintiffs each hold sincere religious beliefs that precluded them from receiving any of the COVID-19 vaccines available.

235. Plaintiffs each notified defendants of those beliefs by requesting a religious exemption and reasonable accommodation from the vaccine mandate.

236. Defendants determined that each Plaintiff had a sincerely held religious beliefs that precluded them from taking the vaccine and notified each Plaintiff of that decision granting them religious exemptions.

COMPLAINT

46

237. The Department determined that at least 3 of the Plaintiffs, utilizing PPE, could be accommodated for their sincerely held religious beliefs utilizing PPE.

238. The Department, and Defendants Windrope and Susewind, thereafter withdrew that determination and refused to provide accommodation to their sincerely held religious beliefs.

239. The Department, Susewind and Windrope specifically withdrew accommodations to 13 exempt employees, some of whom are not currently Plaintiffs.

240. The Defendants then failed to engage with the Plaintiffs in an interactive process as set forth in the EEOC's Compliance Manual on Religious Discrimination before concluding that it would not accommodate any of the Plaintiffs for their sincerely held religious beliefs.

241. Accommodating the Plaintiffs' religious beliefs would not have resulted in any undue hardship to the Department.

242. Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII**.**

243. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

**INJUNCTION AGAINST FUTURE RETALIATION**

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221

244. Plaintiffs here reallege the allegations set forth above in this Complaint.

245. Plaintiffs have the right to be free from discriminatory retaliation for activity statutorily protected activity under Title VII and WLAD, Wash. Rev. Code Ann. § 49.060.010 *et. seq.*

246. Plaintiffs have a fundamental right to be free from a hostile work environment because of their religious beliefs and/or their actions taken in response to an adverse employment action or other statutorily protected activity.

247. Plaintiffs have a right to be free from "disparate treatment" compared to those who do not share their religious beliefs.

248. Plaintiff Shirley has experienced numerous acts of harassment, retaliation, and disparate treatment because of her adverse employment action that required Defendants to reinstate her to her former position with backpay.

249. The Court should ENJOIN Defendants from harassment, retaliation, and disparate treatments against Ms. Shirley, specifically, and other Plaintiffs not yet to be reinstated generally.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for the following relief against the Defendants:

1. Judgment against all Defendants on all claims.

COMPLAINT 48

2.  Money judgment for back pay and front pay, loss of benefits, and loss of pension rights, for those Plaintiffs who were terminated or forced to quit.

3.  Money judgment for back pay, loss of benefits, and loss of pension rights, for those two reinstated Plaintiffs, to the extent they are reinstated.

4.  Double damages for lost wages pursuant to Wash. Rev. Code § 49.52.070.

5.   Money judgment for all Plaintiffs pursuant to the infringement upon their constitutional and statutory rights.

6.  Attorney fees as authorized by State and Federal statute.

7.  Such other and further relief that is just and equitable.

Dated:  January 30th, 2023.

**ARNOLD & JACOBOWITZ PLLC**

*/s/ Nathan J. Arnold*
Nathan J. Arnold, WSBA No. 45356
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
Nathan@CAJlawyers.com
(206)799-4221
*Counsel for Plaintiffs*

ARNOLD & JACOBOWITZ PLLC
8201 164TH AVE. NE, STE. 200
REDMOND, WA 98052
(206) 799-4221