UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RUTHANNA SHIRLEY et al.,<br><br>Plaintiff,<br>v.<br><br>WASHINGTON STATE DEPARTMENT OF FISH AND WILDLIFE et al.,<br><br>Defendant. | CASE NO. 3:23-cv-05077-DGE<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) |

# I  INTRODUCTION

This matter comes before the Court on cross motions for summary judgment (Dkt. Nos. 67, 87). For the foregoing reasons, Defendants' motion is GRANTED and Plaintiffs' motion is DENIED. Plaintiffs' motion for extension of time (Dkt. No. 145) is DENIED as moot.

# II  BACKGROUND

On February 29, 2020, Washington Governor Jay Inslee declared a State of Emergency in Washington in response to the deadly COVID-19 outbreak. (Dkt. No. 68-1 at 2.) He issued Proclamation 20-05, which imposed a "stay-home" order across the state and prohibited social,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 1

recreational, and religious gatherings. (*Id*. at 2.) Eighteen months later, Governor Inslee issued Proclamation 21-14 ("the Proclamation"), which required state employees to be fully vaccinated by October 18, 2021, to continue employment with the state. At that point, more than 346 million doses of the Food and Drug Administration ("FDA") approved COVID-19 vaccine had been administered in the United States and the medical community agreed that serious side effects were rare. (*Id*. at 3.) Because "COVID-19 vaccines are effective in reducing infection and serious disease," the Proclamation concluded that "widespread vaccination is the primary means we have as a state to protect everyone." (*Id*.) However, the Proclamation carved out an exception to the vaccination requirement for employees who were entitled to disability related accommodations or accommodations related to a sincerely held religious belief under relevant anti-discrimination laws, including Title VII and the Washington Law Against Discrimination ("WLAD"). (*Id*. at 4.) This litigation concerns a number of Plaintiffs who requested religious accommodations from the Washington Department of Fish and Wildlife ("WDFW") and were subsequently terminated.

Plaintiffs filed their amended Complaint on May 28, 2024. (Dkt. No. 26.) The Complaint alleges the following causes of action: (1) violation of the WLAD for perceived physical disability, Wash. Rev. Code § 49.60.180; (2) "Deprivation of Privacy," violation of Wash. Const. Art. I, Sec. 7; (3) "Deprivation of Life, Liberty, or Property," violation of U.S. Const. Am. V. Am. XIV, Wash. Const. Art. I, Sec 3; (4) "Violation of the Equal Protection Clause," Wash. Const. Art. I, Sec. 3; (5) "Deprivation of Religious Freedom," Wash. Const. Art. I, Sec. 11; (6) Wage Theft; (7) Breach of Contract; (8) Failure to Accommodate under the WLAD; (9) Disparate Impact Discrimination; (10) Free Exercise; and (11) violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), for Failure to Accommodate Religion. (Dkt.

No. 26 at 36–53.)  The Complaint seeks "[m]oney judgment for back pay and front pay, loss of benefits, and loss of pension rights"; "double damages for lost wages pursuant to Wash. Rev. Code § 49.52.070"; "[m]oney judgment for all Plaintiffs pursuant to the infringement upon their constitutional and statutory rights"; and attorney fees.  (*Id*. at 53–54.)  The Complaint names the WDFW and a number of individual defendants—Kelly Susewind, Amy Windrope, Lonnie Spikes, Steve Bear, and Craig Burley (hereinafter "individual Defendants").  (*See* Dkt. No. 26.)  Finally, although not included in the prayer for relief, the Complaint also appears to include a request for equitable relief, stating: "The Court should ENJOIN [sic] Defendants from harassment, retaliation, and disparate treatments against Ms. Shirley, specifically, and other Plaintiffs not yet to be reinstated generally."  (*Id*. at 53.)

Because this litigation involves more than ten plaintiffs, the Parties stipulated, and the Court ordered, that the Parties could each file two contemporaneous dispositive motions, one dealing with arguments common to all plaintiffs and one asserting arguments applicable only to individual plaintiffs.  (*See* Dkt. No. 60.)  This order takes up the cross motions on the claims that are applicable to all plaintiffs: all claims except claim 8 and claim 11, which deal with failure to accommodate religion under the WLAD and Title VII.  For factual background on individual Plaintiff's claims, see the Court's summary judgment order on the claims applicable to individual Plaintiffs.  (Dkt. No. 159 at 3–5.)

### III    LEGAL STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

1  showing on an essential element of a claim in the case on which the nonmoving party has the
2  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue
3  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find
4  for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
5  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some
6  metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a
7  material fact exists if there is sufficient evidence supporting the claimed factual dispute,
8  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*
9  *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*
10 *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

11      The determination of the existence of a material fact is often a close question.  The court
12 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –
13 e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; T.W. *Elect.*
14 *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor
15 of the nonmoving party only when the facts specifically attested by that party contradict facts
16 specifically attested by the moving party.  The nonmoving party may not merely state that it will
17 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial
18 to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).
19 Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not
20 be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

21              **IV    DISCUSSION**

22      **A.  Federal Constitutional Claims**

Plaintiffs allege violations of the Free Exercise Clause, the Due Process Clause of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment.  (Dkt. No. 26 at 36–53.)

A party that claims federal constitutional violations against the government must bring suit under 42 U.S.C. § 1983.  *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).  To state a claim under Section 1983, a plaintiff must show: (1) that he or she suffered a violation of rights protected by the Constitution or created by federal statute; and (2) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Defendants argue that "each federal constitutional claim against WDFW and the officials fails because the agency and the individuals acting in their official capacities are not 'persons' under 42 U.S.C. § 1983, which is the only vehicle by which a plaintiff may sue state actors for damages based on alleged federal constitutional violations." (Dkt. No. 67 at 11) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).  Defendants emphasize that "[t]his immunity clearly extends to WDFW." (*Id*. at 11) (citing *Lojas v. Washington*, No. CV-07-0140-JLQ, 2008 WL 1837337, at *7 (E.D. Wash. Apr. 22, 2008), aff'd, 347 F. App'x 288 (9th Cir. 2009) ("Because the State Department of Fish and Wildlife is a state agency it is entitled to Eleventh Amendment federal court immunity as is the state of Washington and Ms. Ray-Smith in her official capacity.")).

As this Court has concluded on numerous occasions, to the extent Plaintiffs seek damages against WDFW and the individual Defendants in their official capacities, those claims are barred by sovereign immunity.  *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *c.f. Luxton v. Washington State Dep't of Veterans Affs*., No. 3:23-CV-05238-DGE, 2025 WL 896658, *9–10 (W.D. Wash. Mar. 24, 2025); *Strandquist v. Washington State Dep't of Soc. & Health Servs*.,

1  No. 3:23-CV-05071-TMC, 2024 WL 4645146, *6 (W.D. Wash. Oct. 31, 2024). A state agency

2  is *not* a person for the purposes of Section 1983 and cannot be sued for constitutional violations

3  unless it affirmatively waives its sovereign immunity. *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th

4  Cir. 2022). "State officers in their official capacities, like States themselves, are not amenable to

5  suit for damages under § 1983." *Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 43, 69 n.24 (1997).

6        As to their equal protection claim, Plaintiffs advance the novel argument that, as a matter

7  of law, Title VII abrogates sovereign immunity from suit under the Equal Protection Clause.

8  (Dkt. No. 129 at 19.) Yet "Congress' intent to abrogate the States' immunity from suit must be

9  obvious from "a clear legislative statement."' *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55

10  (1996) (citing *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 786 (1991)). And the

11  provision Plaintiffs cite, 42 U.S.C. § 2000e(a), provides no such statement. It provides that

12  "[f]or the purposes of this subchapter . . . The term 'person' includes . . . governments,

13  governmental agencies, [and] political subdivisions." 42 U.S.C.A. § 2000e(a). This cannot

14  abrogate [state's] sovereign immunity. *See Seminole Tribe,* 517 U.S. at 55. Plaintiffs' assertion

15  that "Plaintiffs may properly vindicate their Equal Protection rights—and, to the extent that they

16  overlap, their Free Exercise rights—against all Defendants under Title VII, not via § 1983 and

17  without being barred by sovereign immunity," is unsupported by caselaw and fundamentally

18  misunderstands the relationship between Title VII and the Fourteenth Amendment. (Dkt. No.

19  129 at 19.) "The Constitution is not a statute." *R.R. Ret. Bd. v. Alton R. Co.*, 295 U.S. 330, 346–

20  47 (1935). The Supreme Court has "never held that the constitutional standard for adjudicating

21  claims of invidious . . . discrimination is identical to the standards applicable under Title VII."

22  *Washington v. Davis*, 426 U.S. 229, 239 (1976).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 6

1    Accordingly, Plaintiff's constitutional claims for damages against WDFW and the
2    individual Defendants in their official capacity are barred by sovereign immunity.
3    Next, "it is well established that parties seeking injunctive relief against state officers in
4    their official capacity must bring their suit under *Ex parte Young*, 209 U.S. 123 (1908)."
5    *Strandquist,* 2024 WL 4645146, at *6 (citing *Virginia Off. for Prot. & Advoc. v. Stewart*, 563
6    U.S. 247, 254 (2011)).  An *Ex parte Young* action requires parties to "allege[ ] an ongoing
7    violation of federal law and seek[ ] relief properly characterized as prospective." *Verizon*
8    *Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).  Plaintiffs request
9    an injunction against "harassment, retaliation, and disparate treatments," and invoke Title VII.
10   (Dkt. No. 26 at 53.)  Title VII permits the court to order injunctive relief "[i]f the court finds that
11   the [employer] has intentionally engaged in or is intentionally engaging in an unlawful
12   employment practice charged in the complaint." 42 U.S.C. § 2000e–5(g)(1).  Here, as
13   Defendants point out, "harassment" and "retaliation" are not "charged in the complaint."  (Dkt.
14   No. 67 at 33.)  Furthermore, Defendants emphasize there is no "ongoing" disparate treatment to
15   enjoin—a claim to which Plaintiffs do not respond.  (*See generally* Dkt. No. 129) (*see also* Dkt.
16   No. 138) ("Plaintiffs offer no evidence or argument in support of their request for injunctive
17   relief.").  Likewise, the Court identifies no ongoing violation of federal law pled.  Plaintiffs
18   therefore do not properly plead a claim for injunctive relief under *Ex Parte Young*.
19   Thus, Defendants' motion for summary judgment on federal constitutional claims against
20   WDFW and the individual Defendants in their official capacities is GRANTED.
21   Defendants next assert Plaintiffs' constitutional claims against the individual Defendants
22   in their personal capacities should be dismissed because: 1) Plaintiffs cannot prove sufficient
23   individual action; 2) the Defendants did not violate a right that was clearly established at the time
24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION
OF TIME (DKT. NO. 145) - 7

1  of the challenged conduct and are therefore entitled to qualified immunity. (Dkt. No. 138 at 4)

2  (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Qualified immunity protects

3  "government officials . . . from liability for civil damages insofar as their conduct does not

4  violate clearly established statutory or constitutional rights of which a reasonable person would

5  have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is the plaintiff's burden to

6  demonstrate that the defendant "violated a federal statutory or constitutional right" and "the

7  unlawfulness of their conduct was clearly established at that time." *Moore v. Garnand*, 83 F.4th

8  743, 750 (9th Cir. 2023) (internal quotations omitted).

9      A court "may begin the qualified immunity analysis by considering whether there is a

10 violation of clearly established law without determining whether a constitutional violation

11 occurred." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d

12 963, 969 (9th Cir. 2010). "To determine whether a constitutional right has been clearly

13 established for qualified immunity purposes," the court "must survey the legal landscape and

14 examine those cases that are most like the instant case." *Krainski*, 616 F.3d at 970 (quoting

15 *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996)). To show that a right is "clearly

16 established," "existing precedent must have placed the statutory or constitutional question

17 beyond debate." *al-Kidd*, 563 U.S. at 741. Additionally, the right must have been established

18 "at the time of the alleged violation." *Moran v. State of Wash.*, 147 F.3d 839. 844 (9th Cir.

19 1998). The Supreme Court has cautioned against defining "clearly established right" with

20 excessive generality. *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

21     Thus, the question here is whether the individual Defendants' alleged misconduct

22 violated a clearly established constitutional right that a reasonable person in their position would

23 have known about. Plaintiffs assert that Suswind and Windrope are not protected by qualified

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION
OF TIME (DKT. NO. 145) - 8

1  immunity and "concede" the argument as to the other individual Defendants.  (Dkt. No. 129 at

2  17.)  As for Windrope and Suswind, Plaintiffs state that "Ms. Windrope was the Department's

3  lead in creating and implementing its vaccination mandate policy to (as she conceived it) comply

4  with the Proclamation" and "she personally decided to rescind the original, reasoned,

5  individualized decision to accommodate Plaintiffs Shirley and Hone, and other exempt

6  employees."  (*Id*.)  "As for Mr. Susewind, as Director, he personally participated in both the

7  policymaking and the decision to rescind accommodations, along with Ms. Windrope," Plaintiffs

8  explain.  (*Id*. at 18.)  Thus, Plaintiffs propose that Windrope and Susewind "should have

9  known . . . that discriminatory application of the Proclamation against religious objectors

10 violated their clearly established right to free exercise of religion." (Dkt. No. 129 at 19–20.)

11 Plaintiffs further argue that "these Defendants must have known . . . that setting up a sham

12 hearing process and ignoring its results when they did not fit the predetermined conclusion,

13 violated Plaintiffs' Due Process rights."  (*Id*. at 21.)

14      Yet even if a reasonable jury could find that WDFW failed to offer some or all Plaintiffs

15 a reasonable accommodation under Title VII of the WLAD, as discussed in this Court's prior

16 order (Dkt. No. 159 at 19–30), Plaintiffs fail to establish that Windrope and Susewind's actions

17 violated any clearly established free exercise right.  At the time of implementation, there was no

18 Supreme Court or Ninth Circuit precedent that would have put the individual Defendants on

19 notice that the Proclamation or their chosen method of implementing it could have been

20 unconstitutional.  Furthermore, district courts have consistently found that officials are entitled to

21 qualified immunity in challenges to public health orders and vaccine mandates passed during the

22 midst of the global COVID-19 pandemic.  *See Strandquist,* 2024 WL 4645146, at *7; *Sinclair v.*

23 *Blewett*, No. 2:20-CV-1397-CL, 2024 WL 21434, at *4 (D. Or. Jan. 2, 2024); *Northland Baptist*

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 9

*Church of St. Paul, Minnesota v. Walz*, 530 F. Supp. 3d 790, 806–807 (D. Minn. 2021), aff'd sub nom. *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365 (8th Cir. 2022); *New Mexico Elks Ass'n v. Grisham*, 595 F. Supp. 3d 1018, 1027 (D.N.M. 2022); *Benner v. Wolf*, 2021 WL 4123973, at *5 (M.D. Pa. Sept. 9, 2021). Ninth Circuit precedent affirms the reasoning of these decisions. *See Bacon v. Woodward*, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024) (upholding facial validity of Proclamation against Free Exercise challenge); *Johnson v. Kotek*, No. 22-35624, 2024 WL 747022, at *3 (9th Cir. Feb. 23, 2024) (qualified immunity bars substantive due process claims against Oregon governor for vaccine mandate); *Armstrong v. Newsom*, No. 21-55060, 2021 WL 6101260, at *1 (9th Cir. Dec. 21, 2021) (qualified immunity bars suits against California governor for his stay-at-home executive order because the order did not violate clearly established law in March 2020).

   Plaintiffs cite *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981) and Justice Gorsuch's concurrence in *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14 (2020) to support the existence of a clearly established free exercise right in this context. Yet the facts of *Thomas* are not analogous to the matter at hand; the case involved the state's denial of unemployment compensation to an employee who had resigned because of a religious conflict. *Thomas,* 450 U.S. at 711–712. Because *Thomas* concerned the constitutionality of the denial of public benefits by states and this case does not involve public benefits, a reasonable official would not assume that case applies to this fact pattern. *See Peters v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01536-YY, 2024 WL 3402699 (D. Or. June 3, 2024) (concluding the same); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("Qualified immunity is not meant to be analyzed in terms of a 'general constitutional guarantee,' but rather the application of general constitutional principles 'in a particular context.'"). Likewise, dicta from a concurrence

1 does not clearly establish a constitutional right for the purposes of determining qualified

2 immunity, assuming arguendo that concurrence is even relevant. A clearly established right is

3 sufficiently clear if "every reasonable official would have understood that what he is doing

4 violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

5      As for due process, Plaintiffs suggest they were denied a procedural due process right

6 because they were not provided with a *Loudermill* hearing before termination. (Dkt. No. 129 at

7 15). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). However, Plaintiffs do not

8 identify clearly established law requiring a *Loudermill* hearing for employees that are separated

9 due to a generally applicable requirement—like a vaccine mandate. In fact, Ninth Circuit

10 precedent cuts the opposite way. In *Bacon*, the court explained that "[t]he notice provided in the

11 Proclamation was . . . sufficient" to satisfy procedural due process challenges to "the substantive

12 rules applied" while implementing the Proclamation, including objections to "what [plaintiffs]

13 considered to be an overly stringent, 'sham' approach to accommodations." *Bacon*, 2024 WL

14 3041850, at *2 (citing *Rea v. Matteucci,* 121 F.3d 483, 484–85 (9th Cir. 1997)). An "overly

15 stringent," "sham" approach is precisely the issue Plaintiffs raise here. (*See, e.g.,* Dkt. No. 129 at

16 21) (discussing an "unreasonably stringent COVID-19 vaccination policy," and a "sham"

17 process). What is more, this Court has already found that the Proclamation and its exemptions

18 and accommodations requirements provided the essential requirements of "notice and an

19 opportunity to respond" required by *Loudermill*. *Pilz v. Inslee*, No. 3:21-cv-05735-BJR, 2022

20 WL 1719172, at *7 (W.D. Wash. May 27, 2022) (the Proclamation "created a process by which

21 employees could apply for exemptions and accommodations, and essentially present [their] side

22 of the story," which is "all that *Loudermill* requires.") *aff'd,* No. 22-35508, 2023 WL 8866565

23 (9th Cir. Dec. 22, 2023).

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 11

1   Accordingly, the individual Defendants are entitled to qualified immunity on Plaintiffs'
2   constitutional claims. The motion for summary judgment on federal constitutional claims is
3   therefore GRANTED.

4   **B. State Constitutional Claims**

5   Defendants argue Plaintiffs' state constitutional claims are barred because there is no
6   private right of action for damages under the Washington State Constitution. Indeed,
7   "Washington law contains no counterpart to 42 U.S.C. § 1983," and Washington courts have
8   denied attempts to create a cause of action for damages under the Washington Constitution
9   without guidance from the legislature. *Lubers v. Hinson*, No. 2:23-CV-01396-JHC, 2024 WL
10  810552, at *2 (W.D. Wash. Feb. 27, 2024) (citing *Blinka v. Washington State Bar Ass'n*, 109
11  Wn. App. 575, 591, 36 P.3d 1094 (2001)); *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1156
12  (W.D. Wash. 2019). Thus, Plaintiffs "concede that Washington law does not provide a private
13  right of action for violation of the State Constitution in general, and specifically as to its free-
14  exercise and equal protection clauses." (Dkt. No. 129 at 23–24.)

15  However, Plaintiffs argue that "the State Constitutional substantive due process right to
16  privacy, specifically bodily autonomy, is another story entirely." (*Id*. at 24) (citing Wash. Const.
17  Art. 1, § 7). Plaintiffs argue that the Washington Constitution protects "the right to autonomous
18  decision-making," which includes "the right to refuse medical treatment" and that there is a
19  cause of action for money damages for such claims. (*Id*.) (citing *Butler v. Kato*, 154 P.3d 259,
20  264 (Wash. Ct. App. 2007); *In re Colyer*, 660 P.3d 738, 742 (Wash. Ct. App. 1983); *Robinson v.
21  City of Seattle*, 10 P.3d 452, 460 (2000); *Wash. Pub. Emp. Ass'n v. Wash. State Ctr. for
22  Childhood Deafness & Hearing Loss*, 450 P.3d 601, 611 (Wash. 2019)). None of the cases put

23
24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 12

forward by Plaintiffs involve a claim for money damages, however.  Moreover, in *Reid v. Pierce Cnty.*, the Washington Supreme Court explicitly *declined* to create such a cause of action:

> Plaintiffs assert the County violated their right of privacy under article I, section 7 of the Washington Constitution and, as such, they should be allowed to bring a civil action for damages against the County. Plaintiffs concede no such action under the state constitution is currently recognized but ask us to use this case to create one. . . . We decline[.] . . . We feel, at this time, that Plaintiffs may obtain adequate relief under the common law and that such actions are better addressed under the common law invasion of privacy action. Plaintiffs have not presented a reasoned or principled basis upon which to construct a constitutional cause of action, nor have they established why a constitutional cause of action is more appropriate than the common law cause of action which already exists. Because we hold Plaintiffs are entitled to maintain an action for invasion of privacy under the common law, we decline to reach this issue in this case.

Subsequently, Washington courts—and courts in this district—have affirmed that a cause of action for money damages under the constitutional right to privacy does *not* exist.  *See Keyes v. Blessing*, No. 25982-0-III, 2008 WL 2546439, at *1 n.1 (Wash. Ct. App. 2008) ("[T]here is no private right of action under [Article I, Section 7] of the state constitution."); *Shavlik v. Snohomish Cnty. Superior Ct.*, No. C18-1094JLR, 2018 WL 6724764 (W.D. Wash. Dec. 21, 2018) ("The Washington Supreme Court has declined to recognize a private right of action under that provision of the Washington Constitution.").

Accordingly, Defendant's motion for summary judgment on all Washington Constitutional claims is GRANTED.

### C.  WLAD Perceived Disability Claim

To state a disability discrimination claim under the WLAD, a plaintiff must show (1) he was perceived to have a disability; (2) he was able to perform the essential functions of the job; and (3) the perception of his disability was a substantial factor in the employer's decision to deny employment.  *Taylor v. Burlington N. R.R. Holdings Inc.*, 801 F. App'x 477, 478 (9th Cir. 2020). "Although the WLAD offers protections at least as broad as those offered under the [Americans

with Disabilities Act], Washington courts look to federal case law interpreting remedial statutes like the ADA and Title VII to guide interpretation of the WLAD." *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 909 (W.D. Wash. 2019) (quoting *Taylor v. Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, 848–49 (9th Cir. 2018)).

In their Complaint, Plaintiffs suggest that "Defendants acted believing Plaintiffs have a perceived physical disability of not having the best protection against COVID-19 in their bodies that conflicted with a stated job requirement defined by Defendants' vaccine mandate." (Dkt. No. 26 at 38.) Defendants argue that refusal to comply with a generally applicable vaccine requirement is not a perceived disability. (Dkt. No. 67 at 27.) In their response, Plaintiffs do not defend the perceived disability claim. (*See generally* Dkt. No. 129.) As another court in this district recently put it, "no reasonable jury would find that a general policy requiring all employees be vaccinated singles out [plaintiffs] for a 'perceived disability.'" *Strandquist,* 2024 WL 4645146, at *13. This Court concurs. District courts have consistently rejected this argument since the inception of similar lawsuits in 2020. *See id.*; *see also Kerkering v. Nike, Inc.*, No. 3:22-CV-01790-YY, 2023 WL 5018003, at *2 (D. Or. May 30, 2023) ("Courts have invariably rejected the theory that an individual's decision to forgo a vaccination constitutes a disability under the ADA."); *Gallo v. Washington Nationals Baseball Club, LLC,* No. 22-CV-01092 (APM), 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) ("Plaintiff thus has failed to state a 'regarded as' disabled claim because he has not alleged that Defendant perceived him to have a disability at the time of his termination. Every court that has considered this question has held the same.").

Accordingly, Plaintiffs' WLAD "perceived disability" claim is DISMISSED on summary judgment.

### D. WLAD Disparate Impact Claim

To state a disparate impact claim under the WLAD, "the plaintiff must prove (1) there is a facially neutral policy or practice and (2) the policy falls more harshly on a protected class." *State v. City of Sunnyside*, 550 P.3d 31, 50 (Wash. 2024) (internal citation omitted). "The elements of a prima facie disparate impact claim under state and federal law are similar[.]" *Id*. Plaintiffs propose the protected class of "religious employees" and specifically those who had "a religious practice of avoiding COVID-19 vaccination." (Dkt. No. 129 at 22.) They argue that "the Department's zero-contract policy disproportionately impacted religious employees in particular," and particularly a "distinctive group of Christians" who oppose vaccination. (*Id*.)

"Courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable subgroups, but not all those who share a single common belief." *Dunbar v. Walt Disney Co*., No. CV 22-1075-DMG (JCX), 2022 WL 18357775, at *3 (C.D. Cal. July 25, 2022). This is because "[i]f a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate-impact claims would have a nearly limitless reach[,] . . . . [and] any policy impacting a plaintiff's specific religious belief would generally impact 100% of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class." *Id*. (citing *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc*., 406 F. Supp. 3d 1258, 1306 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021) (citation omitted)). Considering a similar circumstance, a court in this district similarly concluded that if plaintiffs could define a class based on religious interpretation, "any imposition on an individual's professed religious beliefs would constitute a 100% impact rate and prove disparate impact." *Akiyama v. U.S. Judo Inc*., 181 F. Supp. 2d 1179, 1186 (W.D. Wash. 2002);

1  see also *Cox v. Nw. Reg'l Educ. Serv. Dist.*, No. 3:22-CV-01073-HZ, 2024 WL 777598, 13–14

2  (D. Or. Feb. 23, 2024) (coming to the same conclusion when considering religious objections to

3  a COVID-19 vaccine mandate); *Strandquist,* 2024 WL 4645146, at *14.  This Court agrees and

4  adopts the reasoning of *Dunbar*, *Akiyama*, *Cox,* and *Strandquist*.

5       Here, as in *Strandquist*, "the relevant comparison for a disparate impact claim is between

6  those who objected to vaccination under the mandate based on secular beliefs as opposed to

7  religious beliefs.  Once that comparison is made, it is obvious that [Plaintiffs'] disparate impact

8  claim fails.  Those who objected to vaccination based on secular beliefs were not eligible for

9  accommodation at all—they simply had to get vaccinated or lose their jobs.  Religious objectors,

10  on the other hand, were entitled to a process for seeking exemptions.  The Proclamation fell less

11  harshly on those who objected to vaccination for religious reasons, not more." *Strandquist,* 2024

12  WL 4645146, at *14.

13       Accordingly, Plaintiffs' WLAD disparate impact claim is DISMISSED on summary

14  judgment.

15       **E.  Wage Theft Claim**

16       Defendants argue that the Court should grant summary judgment on Plaintiffs' wage theft

17  claim because "it is premised on WDFW's nonpayment of wages after Plaintiffs' separations"

18  and "WDFW was not obligated to pay Plaintiffs' salaries following their separations."  (Dkt. No.

19  67 at 2.)  Plaintiffs do not put forth evidence or argument in support of their wage theft claim.

20  (*See generally* Dkt. No. 129.)  Because they do not rebut Defendant's arguments, Plaintiffs

21  concede they have merit and the Court deems them abandoned.  *See Shakus v. Schiro*, 514 F.3d

22  878, 892 (9th Cir. 2008).  Moreover, the claim fails as a matter of law because Plaintiffs do not

23  allege that WDFW failed to pay wages owed at the end of the established pay period.  *See* Wash.

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 16

Rev. Code. § 49.48.010 ("[w]hen any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period . . . . It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is" required by law, agreed to by employer and employee, or for medical services.").

For these reasons, Plaintiffs' wage theft claim is DISMISSED on summary judgment.

### F. Breach of Contract Claim

Defendants argue that Plaintiffs' contract claim is improperly plead and has no evidentiary basis because Plaintiffs "have not provided the Court with, or described the terms of, the contracts that were allegedly violated." (Dkt. No. 138 at 13.)  This is fatal to their claim, Defendants argue, because "[t]o prove breach of contract, each plaintiff must prove the existence of a contract, its breach, and resulting damages," and Plaintiffs do not "even allege a contract or term they claim is appliable[.]"  (*Id*. at 14.)

Under Washington Law, an employment contract indefinite as to duration is terminable at will by either the employee or the employer. *Thompson v. St. Regis Paper Co.*, 686 P.2d 1081, 1089 (Wash. 1984).  Plaintiffs have provided no *evidence* showing the alleged contract(s) at issue was not indefinite as to duration and therefore terminable by will.  (*See generally* Dkt. No. 129, Dkt. No. 87.)

Because Plaintiffs have not provided the Court with any evidence or argument in support of Plaintiffs' breach of contract claim, it is DISMISSED on summary judgment.

### G. Plaintiffs' Summary Judgment Motion

Because the Court is granting Defendants' motion for summary judgment in full, the majority of Plaintiffs' motion is moot.  However, Plaintiffs advance one argument that the Court

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 67, 87) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 145) - 17

sees fit to address: Plaintiffs argue that the arbitral awards from the Shirley and Hone arbitrations should have an issue preclusive effect on the claims of the *other* Plaintiffs in this litigation. (Dkt. No. 87 at 18–19.) The Court cannot conceive of how Plaintiffs could be precluded from establishing facts relevant to their case by a prior proceeding in which they were *not* a party or otherwise represented and did not involve their individual claims. *C.f. Bell v. CSX Transportation, Inc.*, 733 F. Supp. 3d 385, 396 (D. Md. 2024). Moreover, this Court has already held that the arbitral awards of Shirley and Hone do not have preclusive effect on any of Shirley's and Hones' claims in this litigation. (Dkt. No. 159 at 8–17.) They also do not have a preclusive effect on the claims of *other* Plaintiffs.

## V  CONCLUSION

Accordingly, Defendants' motion (Dkt. No. 67) is GRANTED. Plaintiffs' first, second, third, fourth, fifth, sixth, seventh, ninth, and tenth claims are DIMISSED on summary judgment. Plaintiffs' motion (Dkt. No. 87) is DENIED. Plaintiffs' motion for extension of time (Dkt. No. 145) is DENIED as moot.

Dated this 9th day of May, 2025.

David G. Estudillo
United States District Judge