UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RUTHANNA SHIRLEY et al., <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON STATE DEPARTMENT OF FISH AND WILDLIFE et al., <br><br> Defendant. | CASE NO. 3:23-cv-05077-DGE <br><br> ORDER GRANTING MOTIONS TO EXCLUDE (DKT. NOS. 63, 65) |

## I     INTRODUCTION

This matter comes before the Court on Defendants' motion to exclude the expert opinion of Dr. Harvey Risch (Dkt. No. 63) and Defendants' motion to exclude the opinions of Lisa Brock and John Cary (Dkt. No. 65.) For the foregoing reasons, Defendants' motions to exclude are GRANTED.

## II     BACKGROUND

On February 29, 2020, Washington Governor Jay Inslee declared a State of Emergency in Washington in response to the deadly COVID-19 outbreak. (Dkt. No. 68-1 at 2). He issued

Proclamation 20-05, which imposed a "stay-home" order across the state and prohibited social, recreational, and religious gatherings. (*Id*. at 2.) Eighteen months later, Governor Inslee issued Proclamation 21-14 ("the Proclamation"), which required state employees to be fully vaccinated by October 18, 2021, to continue employment with the state. Because "COVID-19 vaccines are effective in reducing infection and serious disease," the Proclamation concluded that "widespread vaccination is the primary means we have as a state to protect everyone." (*Id*. at 3.) However, the Proclamation carved out an exception to the vaccination requirement for employees who were entitled to disability related accommodations or accommodations related to a sincerely held religious belief under relevant anti-discrimination laws, including Title VII and the Washington Law Against Discrimination ("WLAD"). (*Id*. at 4.) This litigation concerns a number of Plaintiffs who requested religious accommodations from the Washington State Department of Fish and Wildlife ("WDFW"). The Plaintiffs were initially granted religious accommodations but were informed in late September of 2021 that "no reasonable accommodation" could be found because their jobs "must at times be done in the physical presence of others." (Dkt. No. 85 at 11.) The Plaintiffs were subsequently terminated in November of 2021. (Dkt. No. 161 at 3–5.)

On May 9, 2025, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' claims on summary judgment. (*See id*.) The following claims remain live for trial: Ruthana Shirley's Title VII and WLAD claims, Jonathan Hones' Title VII and WLAD claims, Issac Stutes' WLAD claim, Drew DeLozier's WLAD claim, Samuel Kolb's Title VII claim, and Julia Anderson's Title VII and WLAD claims. Defendants moved to exclude the expert opinion of Dr. Harvey Risch (Dkt. No. 63) as well as those of Lisa Brock and John Cary (Dkt. No. 65.)

**A. Dr. Risch**

Dr. Alan Risch is a Professor Emeritus of Epidemiology at Yale School of Public Health who submitted two expert reports—one on the efficacy of COVID-19 vaccines and vaccine mandates and one rebuttal report. (Dkt. Nos. 64-1, 64-2.) The first report discusses: public health management of the COVID-19 pandemic generally, COVID-19 vaccine effects on virus transmission, and COVID-19 transmission risk. (Dkt. No. 64-1 at 2–14.) The first report also opines on the "risk burden" posed by Plaintiffs. (*Id*. at 14.) Citing Centers for Disease Control ("CDC") data, Dr. Risch states that "it is clear that at the time the Washington state and WDFW employee Covid-19 vaccine mandates were enforced in 2021, appreciable risks of breakthrough infections were evident, making the vaccines substantially imperfect for the supposed role of reducing infection risk, and data supporting this observation were publicly available at the time." (*Id*. at 11.) Dr. Risch suggests that the CDC's calculated breakthrough infection rate is a "very large undercount." (*Id*. at 10.)

In the rebuttal report, Dr. Risch opines that the vaccine mandate failed to recognize that "post infection natural immunity" is as good as if not better than vaccination; references the opinions on breakthrough infections from his earlier report; and applies those opinions to evaluate the risk of COVID-19 breakthrough infections at WDFW. (Dkt. No. 62-4 at 2–10.) He suggests that the "potential infection load" of the terminated employees would have been "very small" as compared to the infection load of the entire workforce. (*Id*. at 10) ("of the 36 terminated unvaccinated individuals, 1.9% of the workforce, even if 100% of them had gotten Covid-19 during the same time period, the total infection load among these unvaccinated (n=36) would have been less than half the total infection load among the vaccinated (n=81)"). He goes on to assert that WDFW cannot establish undue hardship because "the cumulative hardship

would not have been inordinate compared to the larger breakthrough infection burden from the vaccinated staff." (*Id*. at 11.)

### B. Lisa Brock

Lisa Brock has worked in human resources ("HR") for over forty years and was retained by Plaintiffs to produce an HR expert report for this litigation. (Dkt. No. 66-2 at 2.) Most recently, she worked as the HR director at Overlake Medical Center and Clinics. (*Id*.) She testified that her professional opinion in the report is based on her experience as a "practitioner of human resources," and specifically the experience she gained as an "HR practitioner during the time of the proclamation and the COVID vaccine." (Dkt. No. 66-4 at 10.) To produce the report, she reviewed the following documents: the first Complaint, the arbitration decisions of Shirley and Hone, the emails approving the accommodation requests of Shirley and Hone, the denial letters for Frady and Hone, the letter denying Hone reassignment, emails from Rhonda Fenrich "documenting rescinding of accommodations," and emails from Kelly Suswind. (Dkt. No. 66-2 at 2.) Brock testified that she produced the HR expert report by based on a "review [of] the[se] documents" and by using "a template for a report that [she] had used in other [vaccine] cases." (Dkt. No. 66-4 at 6.) She did not review WDFW's accommodations policies. (Dkt. No. 66-2 at 4) ("If they exist, I have not reviewed them."). She did also not review Plaintiffs' job descriptions. (*Id*. at 13–14.) Of the six Plaintiffs going to trial, she did not review any documents specific to four of them—Julia Anderson, Stutes, DeLozier, and Kolb. (Dkt. No. 66-2 at 2.)

In the report, Brock included a step-by-step best practices guide published by the Society for Human Resources Management (SHRM) on handling requests exemptions to a vaccine requirement. (*Id*. at 4.) For each step, Brock provided a practical application, where she

discussed the processes developed at her former employers and evaluated whether WDFW had followed similar processes based on the documents reviewed. *Id.* She also provided legal commentary. (*Id.* at 9) ("I see no evidence the Department conducted an analysis of undue hardship or gave consideration to what reasonable accommodations could have been adopted.")

### C. John Cary

On January 31, 2025—the final day of discovery—Plaintiffs submitted an expert rebuttal report from John Cary. (Dkt. No. 66-3 at 2.) The rebuttal deadline had been extended at the Parties request to January 14, 2025. (Dkt. No. 34) ("the Court admonishes the Parties to file such motions in a timely manner in the future [and] emphasizes that all other deadlines in this case remain unchanged."). Accordingly, the rebuttal was submitted two weeks past the deadline. Indeed, Cary was *retained* after the deadline. (Dkt. No. 103 at 1).

### III    LEGAL STANDARD

### A. Federal Rules

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

1  Additionally, Federal Rule of Civil Procedure 26(a) requires that "a party must disclose to the
2  other parties the identity of any witness it may use at trial to present evidence" and that such
3  witnesses must provide an expert report accompanying the disclosure. Fed. R. Civ. P.
4  26(a)(2)(A) and (a)(2)(B). These disclosures must comply with the court's scheduling order.
5  Fed. R. Civ. P. 26(a)(2)(D). A different date may apply to experts "intended solely to contradict
6  or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. Proc.
7  26(a)(2)(E). "If a party fails to provide information or identify a witness as required by Rule
8  26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a
9  motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
10 Fed. R. Civ. P. 37(c)(1).

**B. *Daubert* Standard**

"Before admitting expert testimony into evidence, the district court must perform a gatekeeping role of ensuring that the testimony is both relevant and reliable under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 597). This requires the court to determine if the expert's reasoning or methodology underlying the testimony: (1) is scientifically valid (i.e. reliable); and (2) can be applied to the facts at issue (i.e. relevant). *Daubert*, 509 U.S. at 592–593.

The reliability inquiry "requires that the expert's testimony have a reliable basis in the knowledge and experience of the relevant discipline." *Ruvalcaba-Garcia*, 923 F.3d. at 1188–1189 (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). In *Daubert*, the Supreme Court set out several factors that courts may consider in determining reliability: "(1) whether a scientific theory or technique can be (and has been) tested;

(2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the techniques operation; and (4) whether the technique is generally accepted." *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1201 (D. Nev. 2008), *aff'd*, 371 F. App'x 752 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 593–94). "The inquiry under Rule 702 is a 'flexible' one, and the district court has 'the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case.'" *Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2019 WL 2918161, at *12 (S.D. Cal. July 5, 2019) (quoting *Kumho Tire,* 526 U.S. at 158); *see also Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." (internal quotations omitted)).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). In other words, expert opinion is relevant if it will help the trier of fact determine a fact in issue. *Daubert*, 509 U.S. at 591. "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id*., citing *Stilwell v. Smith & Nephew, Inc*., 482 F.3d 1187, 1192 (9th Cir. 2007).

The party seeking to introduce expert testimony evidence must show by a preponderance of the evidence that the testimony is admissible under Rule 702.

## IV    DISCUSSION

### A. Dr. Risch

1. Relevancy

Defendants request that the Court exclude Dr. Risch's opinions because they are not relevant under Federal Rule of Evidence 702 or *Daubert*. (Dkt. No. 63 at 11.) They argue that "Dr. Risch's opinion[s] [are] really a backdoor attempt to challenge the policy behind mandatory vaccination itself," and thereby function as "after-the-fact facial challenges to the Proclamation" itself. (*Id.* at 11–12.) Accordingly, Defendants maintain that "Dr. Risch's opinions on the efficacy of COVID-19 vaccines, the role of natural immunity, and the Proclamation should be excluded for lack of relevancy," as they will not assist the trier of fact in understanding "a fact in issue." (*Id.* at 12) (quoting Fed. R. Evid. 702(a)). Additionally, Defendants argue that his opinions based on "information available after WDWF made accommodation decisions regarding Plaintiffs" must be excluded as not relevant. (*Id.* at 13.) Quoting *Lavelle-Hayden v. Legacy Health*, Defendants argue that the Court should not consider any analysis that is based on such information, because "[t]o judge an employer's undue hardship decision based on knowledge and information developed after the fact would hold that employer to an impossible standard." *Id.* (quoting No. 3:22-CV-01752-IM, 2024 WL 3822712, *10 (D. Or. Aug. 14, 2024)).

The Court concludes that Dr. Risch's testimony about the efficacy of COVID-19 vaccines, the role of natural immunity, and the governor's Proclamation requiring vaccination will be excluded for lack of relevance. *C.f. Strandquist v. Washington State Dep't of Soc. & Health Servs.*, No. 3:23-CV-05071-TMC, 2024 WL 4625337, *4 (W.D. Wash. Oct. 30, 2024). Facial challenges to the Proclamation have been rejected and the vaccine mandate itself is not at issue in this litigation—only how WDWF applied it to its employees. *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *3–8 (W.D. Wash. May 27, 2022), *aff'd*, No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023). Accordingly, testimony about the efficacy of the

Governor's vaccine mandate will not aid the "trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Additionally, Dr. Risch's opinions based in evidence from after November of 2021 must be excluded for lack of relevance. (*See* Dkt. No. 64-1, in text citations on 2, 3, 4, 5, 6, 7, 8, 11, 12; Dkt. No. 64-2, in text citations on 4, 5, 6, 7, 9).[1] Likewise, Dr. Risch's conclusions about whether Defendants provided a reasonable accommodation or established undue hardship will be excluded. "Consistent with Rule 704(a), this court has repeatedly affirmed that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter*, 373 F.3d at 1016); Fed. R. Evid. 704(a). "This prohibition of opinion testimony on an ultimate issue of law recognizes that, 'when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Id*. (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

Accordingly, the only part of the reports remaining for the reliability inquiry are Dr. Risch's opinions concerning the risk of breakthrough infections.

2. Reliability

Defendants argue generally that Dr. Risch's opinions are not the product of reliable principles and methods because he does not state "what method of analysis he applies to any of the data he includes in his report." (Dkt. No. 63 at 8.) "Because Dr. Risch's report is silent on the method of analysis being applied, it is impossible to discern whether that method has been subjected to peer review and publication; the potential error rate for the method; whether any standards exist controlling the method's operation; or whether the method has gained general

---

[1] This includes Dr. Risch's opinions on infection transmission. (Dkt. No 64-1 at 7.)

acceptance within the relevant scientific community," Defendants point out. (*Id.*)  As to Dr. Risch's opinions about the risk of breakthrough infections, Defendants argue that he "fails to compare apples to apples." (*Id.* at 9.)

In determining the number of WDWF employees who could have been expected to have breakthrough infections, Dr. Risch uses CDC figure of 4.3%.  The 4.3% figure represents the total number of vaccinated breakthrough cases by the total number of vaccinated people from April 2021 to December 2021: 5,988,636 divided by 139,768,554.  (Dkt. No. 64-1 at 9.)  Note that of the 5,998,636 cumulative total of vaccinated cases, nearly three million (2,968,201) were reported in December of 2021, which was after the Plaintiffs were separated from employment.  (*Id.*)  In November of 2023, the breakthrough vaccination rate would have been hovering around 2%, not 4.3%.  (*See id.*)  Accordingly, Dr. Risch's calculations are incorrect and not reliable.[2]  Additionally, Dr. Risch offers no information or analysis comparing the job duties and responsibilities of the hypothetical employees who would suffer a breakthrough infection with those of the unvaccinated employees.  For example, it is unknown whether any of these hypothetical employees teleworked full-time or otherwise interacted with co-workers or the public.  Thus, even if there were hypothetical employees who suffered breakthrough infections, it impossible to evaluate whether those hypothetical employees would have, or would not have, posed a greater risk than the unvaccinated Plaintiffs in this case.

---

[2] Dr. Risch multiplies the total number of WDWF employees who were vaccinated—1,876 individuals—by 4.3% to determine that 81 people could have been expected to have a breakthrough COVID-19 infection based on the CDC's estimate. (*Id.*) He then suggests that even if every single unvaccinated person got COVID-19, that figure of 36 total people is less than half of the 81 who could be expected to become infected.  However, the correct number should have been approximately 40 individuals, not 81 individuals.

ORDER GRANTING MOTIONS TO EXCLUDE (DKT. NOS. 63, 65) - 10

Furthermore, the Court determines that Dr. Risch's opinion *about* the 4.3% figure—that it "is also likely a very large undercount" is unreliable, as Dr. Risch does not cite any peer reviewed evidence or statistical analysis that suggests that the CDC figure is an undercount or account for whether CDC itself corrected for the factors Dr. Risch opines resulted in the undercount. (Dkt. No. 64-2 at 8.) Because Dr. Risch does not base his critiques of the CDC's methods in widely accepted scientific methods of analysis—and fails to explain the analytical method he is using—it will be excluded.

Therefore, the Court excludes Dr. Risch's expert reports.

**B. Lisa Brock**

Defendants argue that "Brock's opinions are unreliable, irrelevant, and do not assist the trier of fact in understanding the evidence." (Dkt. No. 65 at 6.) Defendants assert that "despite her failure to engage in a comprehensive review of any Plaintiff's accommodation process, Ms. Brock makes several unsupported factual conclusions regarding WDFW's accommodation process and also makes impermissible legal conclusions." (*Id.*) Accordingly, they state that her opinions are not grounded in sufficient facts or data and that the report is based on a subjective and conclusory approach rather than a scientific method that would be sufficient under *Daubert*. (*Id.* at 7–10.)

The Court "must ensure that expert testimony, whether it is based on 'professional studies or personal experience,' employs . . . the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035–36 (9th Cir. 2010) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Brock relies on her personal experience and a paucity of documents to evaluate WDFW's accommodations process. This extremely limited evidence

does not "provide a complete picture of relevant events"—indeed, Brock did not review *any* documents specific to more than half of the Plaintiffs going to trial and did not review the accommodations policies that WDFW had in place. *Powell v. Anheuser–Busch Inc.*, 2012 WL 12953439, *6 (C.D. Cal. Sept. 24, 2012). (Dkt. No. 66-2 at 2.) Thus, Brock "offer[ed] opinions without a full understanding or knowledge of the facts of this case," and the report must be excluded as unreliable. *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1244 (W.D. Wash. 2018) (quoting *Powell*, 2012 WL 12953439, *6); *c.f. Strandquist,* 2024 WL 4625337, *4 (finding that "Brock's expert testimony does not meet the reliability threshold" because "she relies exclusively on her personal experiences with different employers to reach the conclusions in the report."). An expert cannot "rel[y] on the mere fact of his experience with respect to human resources matters to support [his] conclusion." *Moussouris,* 311 F. Supp. 3d at 1246–1247 (quoting *Parton v. United Parcel Serv.*, No. 1:02-cv-2008-WSD, 2005 WL 5974445, at *5 (N.D. Ga. Aug. 2, 2005)). Furthermore, Brock advances numerous inadmissible legal conclusions. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter*, 373 F.3d at 1016) (expert witness cannot give an opinion as to her legal conclusion.)

Accordingly, because Brock's testimony lacks support from sufficient facts or data and fails to sufficiently specify the method by which she reached her conclusions, the testimony does not satisfy the *Daubert* standard and will be excluded.

**C. John Cary**

As the Ninth Circuit recently emphasized, the sanction of Federal Rule of Civil Procedure 37(c)(1) is "self-executing" and "automatic." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1143 (9th Cir. 2025) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Thus, Rule 37 forbids the use of Cary's expert report unless Plaintiffs are able to show

that the failure was substantially justified or harmless. *Id*. Plaintiffs could have requested leave from the Court for late supplementation but did not. Plaintiffs could have notified Defendants and the Court during the discovery hearing on January 30, 2025, but did not. Plaintiffs main argument against excluding Cary is that some of Defendants' experts should also be excluded or, in the alternative, that the Parties should compromise to allow them all to be admitted. Two negatives do not make a positive, however. (Dkt. No. 98 at 4.) Even if Defendants were amenable to this proposed compromise, litigants cannot bargain their way out of automatic and self-executing rules of procedure.

John Cary's expert report is therefore excluded.

## V    CONCLUSION

For the reasons described herein, Defendants' motions to exclude (Dkt. Nos. 63, 65) are GRANTED.

Dated this 13th day of May, 2025.

David G. Estudillo
United States District Judge